The opinion of the court was delivered by
BuhcAN, J.
The first three specifications of error may be considered together, as they embrace the same object; and, if there be error, but one and the same error. That is, that the plaintiffs in error were sued before the justice in their individual characters, and not as a body corporate, which undoubtedly, to this purpose, overseers of the poor are, — and declared against, in the Court of Common Pleas, in their corporate character. Whether the overseers could have taken advantage of this in an earlier stage of the proceedings, it is not necessary for me now to decide. But after they have admitted they were in court, and pleaded to the declaration, and gone to issue and to trial, in their character of overseers of the poor of Roxborough, I do not think it the duty of the court now to go back, and see how and by what name the suit before the justice was commenced. It is but a technical objection. The cause *295 went to trial on its merits, and if they chose to avail themselyes of this objection; they ought to have done it in limine, and not have exposed the plaintiff to the expenses of a tedious suit, when they knew they had a formal objection, which could have put him out of court, whatever the merits of his claim or the justice of his cause might be. 1 do notsay how it would have been, if a different cause of action had been substituted, in the room of that decided by the justice; but no- one who examines these proceedings, with an unprejudiced eye, but must see that the parties before the justice and in the Common Pleas were in fact the same. Their Christian and surnames were used before the justice, their individuality. That was not certainly informal; but if the case had been taken up by certiorari, the Court of Common Pleas ought not to have reversed the judgment for this informality. Then if instead of taking that course, the defendants chose to appeal, for the purpose of trial on the merits, and if they plead to a declaration, in which the overseers were made defendants, using their names merely as descriptions, the objection is abandoned. For even had the whole proceeding been in the Court of Common Pleas, the summons issued, as it did before the justice, but a declaration against them in their corporate chai'aeter, as overseers, and issue and trial, the summons could not be resorted to, in order to establish the variance. After plea pleaded, it is too late to take advantage-of a variance between wx'it and narr. 12 Johns. 438. Indeed, in England, a judgment is never reversed in any court of record, for any variance in any writ, original or judicial, from the declaration or other proceedings. 2 Salk. 701. Thei’e the court held, that a defendant cannot take advantage of a variance between a writ and count, without craving oyer of the writ. In Ford v. Barker, Barnes, 349, the court, as px'aying oyer of the original, had been much «secuto delay, came to a resolution not to grant oyer of the original in future; and, so far have the courts discouraged this dilatoiy course, that with respect to a writ of error for a defective original, as it would be a hard case to set aside a judgment for a mere slip, the master of the rolls would defeat the writ of error by ordering the original to be amended, or, if necessary, granting a new one. Hole v. Finch, 2 Wils. 395. Redman v. Edolph, 1 Saund. 318, a. No. 3.
This, however, is not the rule where the variance is in the nature of the action; but if a plaintiff sue a defendant by a wrong Christian name, and the defendant appear by his right name, the plaintiff may declare against him by such right name. Now, the naming of the individuals who here appeared in the proceedings before the justice, but stating them to be overseers of the poor of Roxborough, and omitting their names in the declaration in the Court of Common Pleas, and the overseers appearing by their right corporate names, cannot be taken advantage of in error.
The justice of Bunn’s claim, for the reasonable support of the pauper, is so apparent, the liability of the township so clear, that *296 unless there is the want of some document required by positive law, some immovable legal obstruction in the way of his recovering, the court would support the verdict and judgment.
The fourth error, is because the 9th section of the act for the relief and maintenance of the poor, providing that no person shall receive relief from the overseer, until am order has been obtained from two justices, and the court declared such order was not necessary. That casual poor may be relieved by the overseers of the poor, without a previous order of maintenance, cannot be doubted. The evidence was, that the poor person was a stranger-■who received an injury in the township, which rendered it impossible to remove him to a distance; that he was taken to Bunn's lodging-house; Charles Levering, one of the overseers,- directed Bunn to take care of him; he employed the physician to attend him, and paid his bill and the funeral expenses; his clothing was taken possession of, sold by the overseers, and the proceeds applied towards his funeral expenses. The doctor testified, that the overseers informed him they had taken the wounded man in charge; the overseers employed him and paid him. The testimony of Michael Levering, the other overseer, was, that he never saw an order of maintenance. In sueh case, the township would be liable, without any order, either of maintenance or removal. They took the man, as it was their duty to do,- under their charge; they directed Bunn to take care of him; they employed a doctor to attend him, and they paid his funeral expenses. The man ought not to be suffered to lie in the road, until first the overseers had notice, and then consulted the justices, and obtained an order of maintenance. It was the duty of the overseers to take immediate care of him; they did take him into their charge. There was evidence sufficient to prove, that they employed the defendant in error to take care of him. This raised a promise which bound the township. It is no objection to the plaintiff’s action, that he did not give notice that he had in his house this healthy person, after having entertained him for ten days. If even that subjected him to the prescribed penalty, it did not exonerate the overseers. This contract-, cither express or implied, for taking care of this dying stranger, was not forbidden by any law. The order of maintenance ought to have been obtained by the overseers; it would be their voucher in the settlement of their accounts with the township. The act likewise directs an entry in the poor books, and the overseers who relieve without sueh orders, forfeit all the money they pay; but the order for relief, and the entry in the poor-books, cannot, in sueh emergency as this, precede the relief; and- the pauper, who never recovers from the injury — never rises from his bed — cannot obtain the order. 13ut the evidence was most conclusive, that the order was one of mainlenanee; the witness who testified this, had the best means of information, — the thing itself, most probable. But still, if it was 'an order of removal, which would be most urv *297 warrantable, as no one could tell where to remove him to, and he was not in a state to be removed. The order, whether of removal or relief, of a casual pauper, gave the overseers authority to take the pauper into their keeping, and to provide for him. This likewise answers the fifth specilication.
I am therefore of opinion that the judgment should be affirmed.
Judgment affirmed.