# THE OVERSEERS *against* McCOY.

A having no resident settlement in the state of Pennsylvania, received an injury in the township of *Fermanah,* which rendered him incapable of supporting himself; he was taken into the township of *Milford,* where he had the means of supporting himself for six days, when he became chargeable: an order of, maintenance was obtained from two justices, by the person at whose house the pauper was, directed to the Overseers of the Poor of *Milford* township. Soon after the pauper died, and was buried by the individual. *Held,* That the person who maintained and buried the pauper, could not recover from the township of *Milford.*

WRIT of error to the Common Pleas of *Mifflin* county.

This action originated before a justice of the peace, from whose judgment, the defendants below appealed.

*John Barling* came from the state of New-York, and was, in the month of April, 1828, employed as a laborer on the canal, in *Fermanah* township, *Mifflin* county. In May, 1828, *Barling* had his leg broken by an accident. *Hawley,* his employer, who owed him a small sum, endeavored to get some one, who lived near to the place where the accident happened, to receive him, but they all refused; he then applied to *McCoy,* the plaintiff below, who resided on the opposite side of the *Juniata* River, and in *Milford* township, to receive him; saying at the same time, that provision would be made for his support. *Hawley* paid *McCoy* for six days' keeping the man, and then gave him notice that he would pay no longer. On the 13th June, 1828, *McCoy* applied to two justices

(The Overseers *v.* McCoy.)

of *Mifflin* county, who resided in *Fermanah* township, for an order of maintenance, which they granted, directed to the overseers of *Milford* township. This order was delivered to them, but the evidence did not establish the time when.

*Barling* was never removed from *McCoy's*, but died there of the wound. This action was then brought by *James McCoy*, against *John Brubecker* and *John Rice*, Overseers of the Poor of *Milford* township, to recover the price of maintaining and burying *Barling*.

When the jury were about to be sworn, the court directed the clerk to swear them, as to the defendants, in their corporate name, and directed the record to be amended by striking out the names of *Brubecker* and *Rice*, which was done, and to which the defendants excepted.

The court below, being of opinion that the plaintiff was entitled to recover in this suit, the jury found accordingly.

Many errors were assigned; the substance of all which was, 1st. That the court erred in their opinion that *Milford* township was liable at all; and 2d. That they erred in ordering the style of the suit to be amended.

*Fisher* and *Potter* for plaintiffs in error.

The township where a pauper first falls sick, is always liable in the first instance, for his maintenance. *Cited, Act* of March, 1771, *Secs.*, 21, 25, 27. But *McCoy*, having received him upon the engagement of *Hawley* to pay for his maintenance, cannot afterwards resort to the township. It would be a fraud upon *Milford* township, thus to introduce a pauper, and attempt to make it liable.

*Banks* for defendant in error.

The meaning of the act is, that the township where the funds of the pauper become exhausted, shall be liable. If he has funds when he falls sick, sufficient to keep him for a time, and with those funds goes to another township to be more comfortable, and then becomes a charge, that township must maintain him.

No appeal lies from an order of maintenance. *Overseers of Lampeter* v. *Overseers of Lancaster*, 2 *Yeates*, 164. And in this case no order of maintenance was necessary. *Overseers* v. *Bunn*, 12 *Serg. & Rawle*, 292.

The court had authority, by the second section of the act of the 2d of March, 1806, to make the amendment. *Bailey* v. *Musgrave*, 2 *Serg. & Rawle*, 219.

The opinion of the court was delivered by

HUSTON, J.—This was an appeal from a justice of the peace, who gave judgment against the overseers for the sum of $43. In court a

(The Overseers *v.* M'Coy.)

*narr.* was filed on a *quantum meruit* for providing meat, drink, washing, lodging and receiving *John Barling*, a pauper. The jury found for the plaintiff $28 02.

The testimony made out the following case: While the state was making the canal up the *Juniata,* through *Mifflin* county, *John Hawley,* a contractor, hired, in April, 1828, *John Barling* as a laborer. *Barling* had come from the state of New-York, and had no place of settlement in this state. Here I must notice a lamentable defect of precision in the dates of the following occurrences. About the last of May, *Barling's* knee and leg were badly shattered, by a rock falling on him—this was in *Fermanah* township ——after applying to two other persons in that township, who declined receiving the wounded man, *Hawley*, on the advice of *Shull,* who kept a tavern in *Fermanah,* sent for *McCoy,* who lived across the river *Juniata,* in *Milford* township, who agreed to take him, and *Hawley* promised *to make provision for him; or that provision should be made for his relief;* and *Barling* was removed to *Milford* township. *After a short time, Hawley* told *McCoy* he would be no longer answerable for his support, and that he must take the course of the law.

*Hawley* says *Barling* was maintained six days by him; on the 13th of June *McCoy* applied to two justices of *Fermanah* township, who made an order of maintenance on the Overseers of the Poor of *Milford.* This was left for three days at the house of one *Wright;* when it was given to the Overseers of *Milford* did not appear; it was in the possession of one of them on the 7th of July, as he acknowledged at the trial before the justice; but no one asked, nor did he state, when he received it. The witness says *Barling* died the 26th of *July;* but this suit was commenced the 2d of July, and the case heard on the 7th. I then take it he died in June. The demand of *McCoy* was $61. *Hawley* stated the money due by him to *Barling,* was only sufficient to pay his expenses for six days, which he paid to *McCoy.*

Our books show but few decisions on the construction of the laws for the support of the poor. Many acts of assembly had passed on this subject, and on the 9th of March, 1771, an act was passed, intended to form a complete system, and supersede all prior laws. This act was made perpetual by the act of the 25th of March, 1782.

It is, however, singular that although it is assumed in many parts of the law, (particularly the 22d, 25th, and preamble to the 27th, and the 27th sections,) that every person who is unable to support him or herself, shall be maintained, by the Overseers of the township where such person is, when he becomes helpless; yet there is no direct provision, that such pauper shall be so maintained, in any part of the act. The law had made so many provisions for gaining

(The Overseers *v.* McCoy.)

a settlement, that it seems to have been assumed that every person would have a settlement somewhere; and it directs that the expense of maintaining a pauper, until he can be removed, or of burying him, in addition to maintenance, if he dies, shall be recovered from the township where his settlement was.    If he had no settlement, no such recovery can be had, and the expense of maintenance remains on the township in which such pauper was when he required relief.    Our courts have always so considered it, and I believe so has every other person.    The order of maintenance is as well known as the order of removal, though the former is no where expressly directed by the act.    See 2 *Yeates*, 164.    12 *Serg. & Rawle*, 292. The present case, independently of the question decided, presents possibly some others, between different parties who are not before us, and on which we do not give any opinion.    I mean, how far *Hawley* is liable to *McCoy*, and whether *Fermanah* township, was not liable to support the man whose leg was broken in that township, he having no settlement elsewhere, and to bury him when he died of the wound.    We have here only to decide on the liability of *Milford* township.

In 6 *Serg. & Rawle*, 563, *Phila.* v. *Bristol*, some particulars are stated which may be useful here: A woman who has a settlement in one township, is taken in labor in another, she cannot be removed for some time; she must be maintained until she is able to move, and must be maintained by the township where she is, and redress had from that where she has a settlement—if she has no settlement, the expense remains on those where she was taken ill. Generally, a bastard child is to be supported where it is born. To this exceptions are stated, as where a woman pregnant of a bastard, is, immediately before delivery, removed to another township by collusion, or where the child is born pending an order of removal, and is then settled on the township against which judgment is given, or where the mother is taken in labor in travelling under the order of removal and the child is born in an intermediate township, and some other cases.    And it is there settled that when a female servant pregnant with a bastard child, is put to hired lodgings to be delivered, in a township different from where her master lived, she may be removed to where she is settled, as likely to become chargeable; though the master engaged the lodgings, and is able to pay for them, and that although the master had no such intention, yet it was a fraud on a township to send such a woman from her master's house, to a township where she has no settlement, and then make that township liable for the support of the bastard.

The case in 12 *Serg. & Rawle*, 292, in some respects resembles the present: in one at least, it is essentially different: that case

(The Overseers *v.* McCoy.)

proves that a stranger wounded or sick, must be supported by the township where he is at the time, and the person in whose house he is, can, by proceeding properly, recover for the time, before, as well as after application to the *Overseers.* That the omission of the Overseers to put the indigent person on the poor book, does not destroy the right of recovery against them, and distinctly recognizes the principle, that a person who has no settlement, must be supported where he falls helpless.

According, that case *Fermanah* was bound to support him, the instant he was disabled, at its own expense, if he had no settlement, with recourse to the place where he had a settlement, if he had such settlement.

Perhaps if he had been carried by persons unknown to *Milford* after he was wounded, and left there, till found by some person, *Milford* must have supported him; and when he died, buried him at its own expense; unless it could have recourse to *Fermanah,* or the persons who removed him to *Milford.*

This is not that case, he was removed to *Milford,* when actually crippled—wounded mortally, by persons well known and voluntarily, (not crippled when brought to his door, but,) received on a previous agreement by *McCoy,* that he should be brought to *Milford,* from *Fermanah,* and this on some promise by those who brought him, that provision for his support should be made. I do not say that *Hawley* or *McCoy* intended a fraud on *Milford,* but most clearly it was one, and in its consequence, if *Milford* is liable, most palpably so.

The fact stated, and so often repeated in the argument, that he had some funds, can deceive no one: A shilling or ten shillings, are funds to get a breakfast, or a day's boarding, but to support a man while the leg and knee are shattered by the falling of a rock on it, are in fact the same as if only one cent or not a cent was in the pocket.

I can at once perceive, that one or two persons in *Fermanah,* having refused to take the man into their houses, and the cruelty and barbarity of dragging him for miles down the river, struck the judge, and he seems to have thought of the humanity of *McCoy,* in taking him into his house. I would have thought better of that, if he had not charged so enormously for the exercise of it. Let us consider the matter. On application to the Overseers of *Fermanah,* they must have provided for him, and on their application, a house would soon have received him. If instead of this, it is once settled, that by individuals refusing and advising to go further, a sick or wounded stranger can be got into another township, and the burden of maintenance cast on that township, it will encourage and increase the barbarity of refusing a wounded man in-

(The Overseers *v.* McCoy.)

to the house.  As it is, whoever admits him, is sure to be paid, on applying to the Overseers of his own township, though the poor tax may be increased.  By the mode pursued in this case, the township is protected from maintenance, and the burden is thrown on the first township in which a man can be found, who will receive him in expectation of getting two dollars a day while he stays.  Let it be understood, I am not speaking of the case where a sick or wounded man comes to the door, and asks admission; in such a case, humanity requires that he should be received, and the law provides, that the householder shall be paid.  This is not such a case.  *McCoy* assisted to bring him into *Milford* on an agreement of some kind.  *Milford* was not liable, and would not have been, but for this act of *McCoy.*  I care not whether the motives of *Shull,* who advised applying to *McCoy* or of *Hawley,* or *McCoy,* were good or bad.  Let them answer to one another for these doings.  These agreements or contracts, cannot affect or render liable those who never knew or heard of them, nor alter the law and remove a burden from one township to another, at least not in favor of, or in case of the very man whose alone gave color to the claim.

If the two Overseers of the poor of *Milford,* had been present, and from the purest humanity had agreed and assisted to remove this man to *Milford,* had assessed a tax and paid his support and burial expenses, the auditors could and would have rejected their account, and they individually must have borne the expense.  Humanity is amiable, and in this country is common; but it is and must be exercised by every individual himself, on his own funds, or personal exertion; when it requires compensation at the expense of others, and especially very large compensation, it ceases to be a virtue.  As a court, we cannot change the law, even where we believe it grievous.  We commend its exercise—but in deciding on the poor laws, in cases where the humane applies for redress under them, we must take the law as it is written, and it contains no provision, that a man who on a contract, brings a man badly wounded and pennyless, from a township which is liable to support him, into one which is not so bound, can compel the latter to pay him for his support.

Judgment reversed, and *venire de novo* awarded.